## FISCHBACH v. THORNLEY.
### Civil Action No. 968.

District Court, D. Connecticut.

Oct. 20, 1943.

Hyman I. Fischbach, of New York City, plaintiff in person, and Cyril Coleman and Day, Berry & Howard, all of Hartford, Conn., for plaintiff.

J. Kenneth Bradley and Pullman & Comley, all of Bridgeport, Conn., for defendant.

SMITH, District Judge.

This is an action by the purchaser of a motor vessel to return the vessel to the seller and recover the purchase money paid.

On trial to the jury, a motion for directed verdict on behalf of the defendant having been denied, and the case submitted to the jury, the jury disagreed and were discharged, and this motion for judgment was seasonably filed by the defendant under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The evidence most favorable to the plaintiff would establish the facts as follows: The plaintiff purchased from the defendant a motor vessel, a 44-foot Chris Craft, for the sum of eleven thousand ($11,000) dollars under an agreement of sale dated September 18, 1942, paying one thousand ($1,000) dollars at the time of the signing of the contract and the balance of ten thousand ($10,000) dollars on receipt of a bill of sale on September 22, 1942. A corrected bill of sale was received by the plaintiff from the defendant on October 2, 1942, when plaintiff completed registration of the vessel in plaintiff's name. Delivery of the vessel in the water at Mamaroneck was accomplished on October 8, 1942. By the agreement, the sale was made contingent upon the acceptance of the vessel and the purchaser by the United States Coast Guard for the Coast Guard Service. Plaintiff filed an offer of vessel with the Office of the Coast Guard for the Third Naval District in New York within one or two days after the delivery of the vessel. On October 10, 1942, the plaintiff took the vessel to Kingston, New York, to submit it to the officer in charge of a Coast Guard base in an endeavor to obtain the acceptance of the vessel and the plaintiff for the Coast Guard Service. Plaintiff returned with the vessel to Mamaroneck on October 14, 1942. At about this time plaintiff visited Eaton's Neck in an effort to enroll the vessel in the Coast Guard there, and telephoned or wrote to other Districts, including the Norfolk, Virginia, Charleston, South Carolina, and Miami, Florida, Districts. On October 29, 1942, the vessel was taken to an East River dock at New York City, and on that date the commanding officer of the Kingston base visited the New York Office of the Coast Guard in an effort to have the vessel accepted for Coast Guard Service in the Third Naval

District. He was unsuccessful and so informed the plaintiff. Thereupon, plaintiff took the vessel to Manasquan, New Jersey, where it was inspected by the Coast Guard officials of the Fourth Naval District, having been offered by the plaintiff for service in that District. After the inspection, the plaintiff proceeded with the vessel to Philadelphia, headquarters of the Fourth Naval District, arriving on November 2 or 3. The following day, plaintiff was given a physical examination for entry into the Coast Guard Service at Philadelphia, and was found physically disqualified by reason of lack of normal color perception. On or about November 10, 1942, he took the vessel to Annapolis, Maryland, in the Fifth Naval District, and himself proceeded to Washington, D. C., and visited the Coast Guard headquarters at Washington, where he failed to obtain a desired waiver of his physical disability. On November 10 or 11, 1942, plaintiff first learned of a Coast Guard order that no more boats of the type of his vessel would be accepted for Coast Guard Service. About this time, plaintiff was informed of the opinion of one or more of the officers of the Coast Guard that the situation would "open up" after the first of the year and that vessels of this type would again be acceptable. After the turn of the year, plaintiff made inquiry and found that this type of vessel was still unacceptable, and thereafter on January 26, 1943, for the first time notified the defendant that he desired to return the vessel and recover the purchase price.

On the construction of the contract most favorable to the plaintiff, it may be considered a contract of sale and return. While the reference to the return of "deposit money" in the contract, Paragraph 2, might indicate an intention that the offer of the vessel and purchaser to the Coast Guard should be made and determined by October 3, the latest date for the payment of the balance of the purchase money under the contract, it is not conclusive. Paragraph 3 apparently contemplates that some property in the vessel and equipment should pass prior to the payment of the balance of the purchase price. Moreover, evidence was offered that an offer of the vessel to the Coast Guard could only be made by the plaintiff after title had passed to him. Since title was to be transferred, in accordance with Paragraph 4 of the contract only upon receipt of the final payment, the contingency clause of Paragraph 2 would be meaningless under the inference drawn

by defendant from the use of the phrase "deposit money", if these facts were true and known to the parties at the time of the execution of the contract, as the jury might have found. The first and second grounds of defendant's motion must, therefore, fail.

The evidence of the plaintiff, taken as true for the purpose of this motion, shows that plaintiff and defendant's agent understood the purpose of the plaintiff in acquiring the vessel was to obtain a military status in the Coast Guard which would give him deferment under the Selective Service law, and the jury might have found that the term "United States Coast Guard Service" as used in the contract referred to military service in the Coast Guard as distinct from the non-military service of the Auxiliary. The fourth ground of defendant's motion must, therefore, fail.

On the third, fifth, and sixth grounds of defendant's motion, the question is whether the evidence is such that the Court must hold, as a matter of law, that the plaintiff has violated his duty under the contract so to use the vessel that he would be able to return it in substantially the same condition as when it was received by him, if the contingency occurred and the vessel or plaintiff was rejected by the Coast Guard; or must hold that he kept it so long that lapse of time so changed its condition or value that he could no longer return the vessel in substantially the same condition as when he received it; or must hold that he kept the vessel more than a reasonable time after its receipt by him or after its rejection by the Coast Guard, or more than a reasonable time after his rejection by the Coast Guard because of lack of normal color perception.

On the construction of the contract most favorable to the plaintiff, the plaintiff was entitled to make reasonable use of the vessel in submitting it for acceptance by the Coast Guard. He also had a reasonable time to seek the entry of himself and the vessel into the Coast Guard Service and a reasonable time to return the vessel thereafter if either was rejected. Ordinarily, in this situation, the question of the reasonableness of his actions and of the length of time taken by him is a question of fact for the jury. Where, however, there is no evidence upon which the jury could properly find that plaintiff acted within a reasonable time, the Court is required to decide the question as a matter of law.

It was plaintiff's duty to submit himself and vessel for acceptance for Coast Guard duty with reasonable promptness. It was also his duty to notify defendant and return the vessel with reasonable promptness upon rejection of either. Was there evidence from which the jury could determine that he has met these obligations? Possibly his applications to enroll the vessel in the Third, Fourth, and Fifth Naval Districts could be construed to meet the first requirement, reasonable promptness in submitting himself and vessel for acceptance.

The evidence which he claims to justify his delay after November 3 or 4, when he learned of his physical disqualification, does not, however, furnish a basis on which a jury could properly find that he had acted with reasonable promptness in notifying defendant and proffering return of the vessel after rejection. He knew then that while the vessel was acceptable in type for inshore work on captain of the port duty, no such vessels would be accepted for an indefinite period continuing at least until the first of the year, and he knew further that he could not meet the official physical requirements for Coast Guard Service. The jury would not have been justified in finding retention of the vessel until January 26, 1943, under these circumstances in the hope of the "opening up" of the Coast Guard's acceptance of such vessels and in the hope of obtaining a waiver of his physical disability, a fulfillment of his duty to notify the defendant and return the vessel with reasonable promptness after the rejection of either. There is some evidence that waivers of the official physical requirements were customarily granted to applicants for enrollment in the Reserve, particularly if the officers of the District in which application was filed made a strong recommendation to that effect to the headquarters at Washington. Even though the jury were to find that such a custom actually existed and was relied upon by the plaintiff, the proof would fall short of a reasonable justification of the delay in this case after plaintiff had been examined, rejected, and a waiver refused him by the Coast Guard Headquarters.

The motion for a directed verdict for the defendant should have been granted. Judgment may be entered for the defendant to recover his costs.